**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**SCOTT LEMON,**

**Petitioner,**

**Civil No: 04-71943**
**Honorable George Caram Steeh**
**Magistrate Judge Wallace Capel, Jr.**

**v.**

**RAY WOLFE, Warden of Pugsley Correctional Facility,**

**Respondent.**

---

**MEMORANDUM OPINION & ORDER GRANTING PETITIONER'S MOTION FOR BOND PENDING HEARING ON WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2254**

## I. INTRODUCTION

This matter is before the Court on Petitioner's Motion for Bond Pending Hearing on the Application for Writ of Habeas Corpus Under 28 U.S.C. §2254. Respondent filed his Response to Petitioner's Motion for Bond Pending Habeas. Petitioner subsequently filed his Reply Brief to Respondent's Answer in Opposition to the Petitioner for a Writ of Habeas Corpus.

Petitioner was charged with criminal sexual conduct in the third degree in violation of MCL §750.520(d) and of furnishing alcohol to a minor in violation of MCL §463.1701(1). Subsequent to a jury trial in Wayne County Circuit Court, on December 7, 2000, Petitioner was convicted on both counts. On January 19, 2001, Petitioner was sentenced to three years to 22 ½ years for the criminal sexual conduct conviction and to a concurrent term of ninety-one days (time served) for furnishing alcohol to a minor.

After Petitioner exhausted his appellate remedies relative to this matter, he filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. §2254 with this Court. It is Petitioner's request that he be released on bond pending the disposition of his habeas petition.

## II. STATEMENT OF SUBSTANTIVE FACTS, TRIAL THEORIES & PETITIONER'S CLAIMS

Amy Valentine (hereinafter, "Complainant"), testified at trial that on or about November 13, 1998, the Petitioner digitally penetrated her vagina after he plied her with alcoholic beverages, which left her intoxicated and physically helpless. The Complainant was sixteen years of age and the Petitioner was twenty-three years old at the time of the incident. The alleged sexual assault took place in a trailer home in which the Petitioner resided. It was not until approximately one year later, however, that the Complainant decided to report the alleged sexual assault to the police.

George Kitchen, Petitioner's roommate at the time, and Alicia Valentine, Complainant's twin sister, testified that they were in the mobile home during the incident and witnessed some portion of the alleged sexual assault. The defense theory was that Mr. Kitchen and the Valentine sisters created this sexual assault story from fiction because Mr. Kitchen was upset with the Petitioner. Defense counsel further attempted to portray Mr. Kitchen to the jury as a liar and as an incredible witness.

Petitioner argues in his habeas petition that the defense put on by trial counsel was woefully deficient, which is the basis for his ineffective assistance of counsel claim. Petitioner asserts that although trial counsel's theory that Mr. Kitchen and the Valentine sisters made up the sexual assault story may be true, he failed to provide the jury a reason these individuals would desire to accuse the Petitioner of this crime. Petitioner maintains that defense counsel argued that Mr. Kitchen was upset with the Petitioner, but failed to articulate why he was upset and why the Valentine sisters would

go along with such a story.

It is Petitioner's position that Mr. Kitchen, who was twenty-eight years old at the time, sought the affection of Kathryn Lindley, the sixteen year old girlfriend of the Petitioner. When Kathryn Lindley rebuffed Mr. Kitchen's affections, Mr. Kitchen began to harass Kathryn Lindley and her family. These allegations have been documented by the court and the police through court filings and reports (i.e., personal protection orders, police reports, affidavits) " *(Petitioner's Appendix in Support of Petition for Writ of Habeas Corpus, 15a-30, 33a-38a).* As part of Mr. Kitchen's plan to retaliate against Ms. Lindley for rejecting him, it is Petitioner's position that Mr. Kitchen sought to assist in the incarceration of the Petitioner, Ms. Lindley's boyfriend. Petitioner maintains that trial counsel's strategy of failing to inform the jury of these facts and to develop this theory deprived Petitioner of his only viable defense.

Petitioner states that defense counsel was ineffective in other ways as well: (1) failed to request proper jury instructions; (2) failed to object to prosecutorial misconduct; (3) failed to impeach certain witnesses by using evidence of prior convictions and prior inconsistent statements; and (4) failed to instruct the jury on the issue of impeachment. Petitioner also argues that the prosecutor engaged in misconduct by: (1) vouching for the credibility of his witness; (2) asking the jurors to place themselves in the position of the Complainant; (3) unfairly commenting on the Petitioner's exercise of his right to remain silent; and (4) using a civic duty argument in front to the jury. Finally, Petitioner contends that the trial court failed to properly instruct the jury on impeachment and prior inconsistent statements.

## III. STATEMENT OF FACTS RELATIVE TO PETITIONER'S HISTORY OF BOND RELEASE

After Petitioner was arraigned on the above referenced charges, he was released on bond until December 7, 2000, which was the date the jury found Petitioner guilty. Petitioner subsequently filed a claim of appeal and a motion for new trial. Petitioner's motion for new trial was granted; and he was released on bond pending his appeal. After the Michigan Court of Appeals reversed the trial court's order granting Petitioner a new trial and affirmed his convictions and sentence, Petitioner was allowed to remain on bond pending his appeal to the Michigan Supreme Court. When the Michigan Supreme Court denied Petitioner's application for leave to appeal, the prosecution sought to revoke Petitioner's bond pending Petitioner's motion for reconsideration. The prosecution's motion was granted; and the Petitioner was remanded to the custody of the Department of Corrections. There is no dispute in the pleadings before this Court that Petitioner has appeared for all court proceedings in the trial and appellate courts; and that the time periods in which Petitioner was released on bond were uneventful.

Petitioner subsequently filed his petition for habeas relief and presently seeks to be released on bond pending its disposition.

## IV. STANDARD OF JURISDICTIONAL & SUBSTANTIVE REVIEW

This Court has inherent power to admit applicants to bail pending the disposition of habeas petitions, however, this power is to be exercised sparingly. *See, Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985). The reason this power is to used temperately is due to the belief that a "defendant whose conviction has been affirmed on appeal . . . is unlikely to have been convicted unjustly; hence the case for bail pending resolution of his postconviction proceeding is even weaker than the case for bail pending appeal." *Id.* "And the interest in the finality of criminal proceedings is poorly served by deferring execution of sentence till long after the defendant has been convicted."

*Id.*

In order to receive bond pending a decision on a petition for a writ of habeas corpus, "[a petitioner] must be able to show not only a substantial claim of law based on the facts surrounding the petitioner but also the existence of some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice." *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993); *See also Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990).

## V. LAW & ANALYSIS

### A. Substantial Claim

Petitioner raises three claims in his request for habeas relief: (1) ineffective assistance of counsel; (2) improper jury instruction; and (3) prosecutorial misconduct. However, the crux of Petitioner's "substantial claim" argument for purposes of this Motion focuses upon his ineffective assistance of counsel claim. This is also the claim that the trial court emphasized when it granted Petitioner's motion for a new trial.

Following Petitioner's jury trial, he filed a claim of appeal and a motion for remand for the purpose of conducting a *Ginther*[1] hearing. The Michigan Court of Appeals granted Petitioner's motion and a *Ginther* hearing was held by the trial court on November 27, 2001 and November 28, 2001. After the testimony, the trial court ruled that the Petitioner had "overcome the presumption that defense counsel's performance was based on sound trial strategy [and that Petitioner had] demonstrated that counsel's performance was objectively unreasonably and so prejudicial as to deprive him of a fair trial. *People v. Mitchell*, 454 Mich. 145, 162 (1997)." *(Petitioner's Appendix in Support of Petition for Writ of Habeas Corpus, 3a-4a).* Therefore, the trial court granted

---

[1] *People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973)

Petitioner's motion for new trial on December 7, 2001.

However, on May 22, 2003, the Michigan Court of Appeals reversed the trial court's December 7, 2001 Order finding that "the trial court exceeded the scope of the Court's remand order when it granted defendant a new trial on the basis of ineffective assistance of counsel." *People v. Lemon*, 2003 W 33347691, Mich. Ct. App. No. 21210243, *2 (per curiam) (May 22, 2003). The Michigan Court of Appeals reasoned that "[a]lthough the trial court was directed to make findings of fact and a determination on the record, this Court retained jurisdiction to decide the issue whether defendant was denied the effective assistance of counsel." *Id.* Since "the [sole] purpose of the remand was to require the trial court to create an adequate record on which [the Court of Appeals] could review the issue of appeal . . . the order granting defendant a new trial was vacated." *Id.*

Despite the Michigan Court of Appeals' reversal of the trial court's Order granting a new trial, case law provides that a trial court's order granting a new trial relative to an issue that is before a federal court for habeas review significantly bolsters a petitioner's "substantial claim" argument when seeking to be released on bond. *Puertas v. Overton*, 272 F.Supp.2d 621, 631 (E.D. Mich. 2003). In this case, the trial court agreed that it was not an objectively reasonable strategy to exclude the evidence and testimony regarding the relationship and documented incidents involving Ms. Lindley, Mr. Kitchen and the Valentine twins." *(Petitioner's Appendix in Support of Petition for Writ of Habeas Corpus, 3a-4a).*

The Michigan Court of Appeals was persuaded by trial counsel's testimony at the *Ginther* hearing regarding his three-fold reasoning for not presenting Petitioner's proposed theory to the jury (i.e., (1) Mr. Kitchen and the Valentine twins' testimony against the Petitioner was an act of retaliation; and (2) the basis upon which their animosity against the Petitioner originated, Ms.

Lindley). First, defense counsel stated at the *Ginther* hearing that since Ms. Lindley was approximately sixteen years of age at the time of trial and Petitioner was approximately twenty-three years old, he did not want to bring to the jury's attention the age difference, nor did he want the jury to think that if Petitioner has a sixteen year old girl friend, he may have been capable of raping the sixteen-year old Complainant. *(Evidentiary Hearing Transcript, 11/27/01, pp. 14-15, 27).* Second, trial counsel argued that the relationship between Ms. Lindley, Mr. Kitchen and the Valentine twins had nothing to do with the Petitioner, thereby making any evidence or testimony relative to these individuals peripheral, irrelevant and inadmissible. *Id.* at 27, 33, 41. Finally, if Ms. Lindley testified, defense counsel believed that he would risk Petitioner being convicted for the misdemeanor charge of furnishing alcohol to a minor. *(Petitioner's Appendix in Support of Petition for Writ of Habeas Corpus, 4a).*

For purposes of determining whether the Petitioner in this case has established a substantial ineffective assistance of counsel claim relative to trial counsel's failure to develop the proposed defense theory, the Court finds that Petitioner has met his burden for the following reasons. First, trial counsel stated that he did not develop the proposed defense theory because he did not want the jury to become aware of or to focus upon the fact that Petitioner's girlfriend, Ms. Lindley, was a high school teenager and approximately seven years Petitioner's junior. However, the jury was made aware of this fact on more than one occasion during trial without Ms. Lindley being produced as a witness. Mr. Kitchen testified that Petitioner was involved with Ms. Lindley and that she had not yet reached the age of sixteen. *(Trial Transcript, dated 12/7/00, pp. 23-24).* The Complainant testified that she knew Ms. Lindley and alluded to the fact that Ms. Lindley was a student at her (Complainant's) high school. *(Trial Transcript, dated 12/5/00, pg. 80).* Alicia Valentine, stated

through her testimony that Ms. Lindley was a student at her high school and that she was harassed by Ms. Lindley and the Petitioner, who was at her high school frequently. *(Trial Transcript, dated 12/7/00, pp. 48-49).*

Moreover, the *Ginther* hearing testimony bears out that although trial counsel was certainly made aware of the facts in support of Petitioner's proposed theory, defense counsel admitted that he was not aware of all of the confrontational situations, the parties involved, the details surrounding the alleged harassment of Ms. Lindley, and the involvement of the Mr. Kitchen and the Valentine twins, in part because he admittedly did not investigate the matter thoroughly (i.e., failed to access court files)[2]. *(Evidentiary Hearing Transcript, 11/27/01, pp. 17-18).*

Second, trial counsel argued that the Lindley, Kitchen, and Valentine saga had nothing to do with the Petitioner, and was therefore irrelevant, collateral and inadmissible in Petitioner's case. However, the record indicates otherwise. An addendum to Ms. Lindley's petition for a personal protection stalking order against Mr. Kitchen states that he threatened Ms. Lindley by telling her she had to say on tape that she slept with the Petitioner; and if she did not, he would not leave her alone. *(Petitioner's Appendix in Support of Petition for Writ of Habeas Corpus, 17a).* It could be argued that Mr. Kitchen's zeal to obtain such a recording was an attempt on his part to possess statutory rape

evidence against the Petitioner. That evidence could have been used to get the Petitioner arrested

[2] Petitioner also asserts that trial counsel's failure to access court files and police reports regarding Mr. Kitchen and the Valentine sisters' criminal history precluded him from using relevant and admissible impeachment evidence and prior inconsistent testimony against these individuals in a further effort to challenge their credibility and emphasize their bias and motive to incriminate the Petitioner in this criminal sexual conduct offense.

and imprisoned, which was ultimately achieved with Mr. Kitchen's testimony in this case.

Also, as previously stated, Alicia Valentine testified that the Petitioner harassed her at school. *(Trial Transcript, dated 12/7/00, pp. 48-49).* It could have been argued that this testimony showed that there was another motive to retaliate against the Petitioner. Finally, Mr. Kitchen accompanied the Complainant to the police station to file the rape complaint against the Petitioner approximately one year after the incident (11/5/99) and nine days after Mr. Kitchen learned that Ms. Lindley filed a police report against him for harassment (10/27/99). *(Petitioner's Appendix in Support of Petition for Writ of Habeas Corpus, 20a, 22a).* In any case, the record indicates that there is a relevant connection between Mr. Kitchen, Ms. Lindley, the Valentine twins and the Petitioner.

Lastly, defense counsel failed to articulate how Ms. Lindley being a witness would heighten the probability of Petitioner being convicted for furnishing alcohol to the Complainant. Despite the strategy, Petitioner was still convicted of the misdemeanor charge.

The Court finds that in light of: (1) the trial court's order granting a new trial; (2) the jury's knowledge about Ms. Lindley's age; and (3) the connection between Mr. Kitchen, Ms. Lindley, the Valentine twins and the Petitioner, as borne out in the record, that there is sufficient evidence to obfuscate defense counsel's explanation for his trial strategy in this case as being reasonable. Further these facts substantiate Petitioner's position that he has a substantial ineffective assistance of counsel claim relative to trial counsel's deficient performance in developing Petitioner's proposed defense theory and in impeaching Petitioner's adversarial witnesses.

**B. <u>Exceptional Circumstance</u>**

Petitioner's request to be released on bond was filed on September 7, 2004. Respondent filed his responsive pleading to Petitioner's habeas request for relief on November 30, 2004. A reply to Respondent's responsive pleading was filed on December 7, 2004; and Respondent filed a response to Petitioner's bond motion on December 8, 2004. Petitioner states that he is eligible for parole on October 1, 2005; and Respondent does not dispute this fact. Petitioner asserts that his close parole eligibility date (which is less than two months away at this point in the proceedings) will make his request for habeas relief meaningless should he be compelled to remain incarcerated, be released on October 1, 2005 and his habeas petition is still pending. Respondent contends that such a circumstance is not exceptional and does not meet the second prong of the bond release test.

A prisoner may seek federal habeas relief only if he is in custody in violation of the constitution or federal law. *28 U.S.C. §2254(a).* Moreover, a petition for habeas corpus relief generally becomes moot when a prisoner is released from custody before the court has addressed the merits of the petition. *Lane v. Williams,* 455 U.S. 624, 631 (1982). In other words, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477 (1990). Therefore, while a federal court may initially have jurisdiction over a habeas matter, it may lose the power to grant habeas relief if the petitioner serves his sentence and in effect moots the habeas petition. *United States v. Rundle,* 220 F.Supp. 768, 768 (E.D. Pa. 1963). Consequently, if the petitioner has fully served his sentence, habeas corpus relief would no longer be available to test the legality of his sentence because the petition would be moot. *Mebane v. Peyton*, 274 F.Supp.843, 844 (W.D. Va. 1967).

In this case, although Petitioner's habeas petition becoming moot is not absolute, the

probability of Petitioner losing his ability to contest the legality of his conviction is significant enough to warrant this case as being an exceptional circumstance "deserving of special treatment in the interests of justice" under the bond release requirements. *See, Puertas v. Overton,* 272 F.Supp.2d at 630.

Consequently, the Court finds that in light of Petitioner's impending parole date coupled with the probability that the habeas petition in this matter may become moot, thereby vitiating Petitioner's ability to pursue habeas relief in this matter, there exists an exceptional circumstance in this case.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that Petitioner has demonstrated that he has a substantial claim of law in this case. Moreover, Petitioner has shown that within this case, there exists exceptional circumstances deserving of special treatment in the interests of justice.

Accordingly,

IT IS HEREBY ORDERED that Petitioner's Motion for Bond Pending Hearing on the Application for Writ of Habeas Corpus Under 28 U.S.C. §2254 **[Docket No: 7-1, filed September 7, 2004]** is **GRANTED.**

IT IS FURTHER ORDERED that Petitioner remain free on bond during the pendency of this action under the same terms and conditions set forth in Petitioner's State court bond dated April 4, 202.[3]

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: July 25, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on July 25, 2005, by electronic and/or ordinary mail.

s/Josephine Chaffee
Secretary/Deputy Clerk

3

The April 4, 2002 Order states as follows: "The bond is set at $10,000.00 or 10%. Defendant is to be supervised by pretrial services. GPS tether to be installed prior to release. Defendant or his agents to have no contact with Amy Valentine, her family or listed witnesses."