**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**SCOTT LEMON,**

      **Petitioner,**

                                      **Civil No: 04-71943**
                                      **Honorable George Caram Steeh**
                                      **Magistrate Judge Wallace Capel, Jr.**

**v.**

**RAY WOLFE, Warden of Pugsley
Correctional Facility,**

      **Respondent.**
_____

**MEMORANDUM OPINION & ORDER DENYING PETITIONER'S
WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2254**

**I. INTRODUCTION**

      This matter is before the Court on Petitioner's Writ of Habeas Corpus Under 28 U.S.C. §2254.  Respondent filed his Answer in Opposition to Petitioner for Writ of Habeas Corpus. Petitioner subsequently filed his Reply Brief to Respondent's Answer in Opposition to the Petitioner for a Writ of Habeas Corpus.

      Petitioner was charged with criminal sexual conduct in the third degree in violation of MCL §750.520(d) and of furnishing alcohol to a minor in violation of MCL §463.1701(1).  Subsequent to a jury trial in Wayne County Circuit Court, on December 7, 2000, Petitioner was convicted on both counts.  On January 19, 2001, Petitioner was sentenced as a second habitual offender to three years to 22 ½ years for the criminal sexual conduct conviction and to a concurrent term of ninety-one days (time served) for furnishing alcohol to a minor.

      After Petitioner exhausted  his appellate remedies relative to this matter, he filed a Petition

for Writ of Habeas Corpus Under 28 U.S.C. §2254 with this Court. Petitioner challenges the legality of his conviction and raises three issues for the Court's review. First, Petitioner asserts that he was denied effective assistance of counsel because his attorney allegedly failed to: (1) investigate witnesses; (2) offer evidence regarding the circumstances of the sexual assault charges at issue; (3) ask the trial court to instruct the jury on impeachment by prior inconsistent statement; (4) ask for a mistrial; and (5) object to prosecutorial misconduct.  Second, Petitioner claims that the trial court failed to properly instruct the jury relative to the issue of  impeachment by prior conviction and by prior inconsistent statement.  Finally, Petitioner maintains that he was denied due process as a result of prosecutorial misconduct.

Respondent argues the following: (1) that Petitioner's claims of prosecutorial misconduct are procedurally defaulted; (2) that Petitioner's ineffective assistance of counsel claim is without merit and a reasonable application of U.S. Supreme Court law was applied by the Michigan Court of Appeals relative to that issue; and (3) that Petitioner's failure to instruct the jury claim is waived since there was no objection to the jury instructions as read at trial.

Upon review of the pleadings, the Court denies Petitioner's Writ of Habeas Corpus.

## II.  STATEMENT OF SUBSTANTIVE FACTS, TRIAL THEORIES & PETITIONER'S CLAIMS

Amy Valentine (hereinafter, "Complainant"),  testified at trial that on or about November 13, 1998, the Petitioner digitally penetrated her vagina after he plied her with alcoholic beverages, which left her intoxicated and physically helpless.  The Complainant was sixteen years of age and the Petitioner was twenty-three years old at the time of the incident.  The alleged sexual assault took place in a trailer home in which the Petitioner resided.  It was not until approximately one year later, however, that the Complainant decided to report the alleged sexual assault to the police.

2

George Kitchen, Petitioner's roommate at the time, and Alicia Valentine, Complainant's twin sister, testified that they were in the mobile home during the incident and witnessed some portion of the alleged sexual assault. The defense theory was that Mr. Kitchen and the Valentine sisters created this sexual assault story from fiction because Mr. Kitchen was upset with the Petitioner. Defense counsel further attempted to portray Mr. Kitchen to the jury as a liar and as an incredible witness.

Petitioner argues in his habeas petition that the defense put on by trial counsel was woefully deficient, which is the basis for his ineffective assistance of counsel claim. Petitioner asserts that although trial counsel's theory that Mr. Kitchen and the Valentine sisters made up the sexual assault story may be true, he failed to provide the jury a reason these individuals would desire to accuse the Petitioner of this crime. Petitioner maintains that defense counsel argued that Mr. Kitchen was upset with the Petitioner, but failed to articulate why he was upset and why the Valentine sisters would go along with such a story.

It is Petitioner's position that Mr. Kitchen, who was twenty-eight years old at the time, sought the affection of Kathryn Lindley, the sixteen year old girlfriend of the Petitioner. When Kathryn Lindley rebuffed Mr. Kitchen's affections, Mr. Kitchen began to harass Kathryn Lindley and her family. These allegations have been documented by the court and the police through court filings and reports (i.e., personal protection orders, police reports, affidavits) " *(Petitioner's Appendix in Support of Petition for Writ of Habeas Corpus, 15a-30, 33a-38a).* As part of Mr. Kitchen's plan to retaliate against Ms. Lindley for rejecting him, it is Petitioner's position that Mr. Kitchen sought to assist in the incarceration of the Petitioner, Ms. Lindley's boyfriend. Petitioner maintains that trial counsel's strategy of failing to inform the jury of these facts and to develop this

3

theory deprived Petitioner of his only viable defense.

Petitioner states that defense counsel was ineffective in other ways as well: (1) failed to request proper jury instructions; (2) failed to object to prosecutorial misconduct; (3) failed to impeach certain witnesses by using evidence of prior convictions and prior inconsistent statements; and (4) failed to instruct the jury on the issue of impeachment. Petitioner also argues that the prosecutor engaged in misconduct by: (1) vouching for the credibility of his witness; (2) asking the jurors to place themselves in the position of the Complainant; (3) unfairly commenting on the Petitioner's exercise of his right to remain silent; and (4) using a civic duty argument in front of the jury. Finally, Petitioner contends that the trial court failed to properly instruct the jury on impeachment and prior inconsistent statements.

## III.  PROCEDURAL HISTORY

Following Petitioner's jury trial, he filed a claim of appeal and a motion for remand for the purpose of conducting a *Ginther*[1] hearing. The Michigan Court of Appeals granted Petitioner's motion and a *Ginther* hearing was held by the trial court on November 27, 2001 and November 28, 2001. After the testimony, the trial court ruled that the Petitioner had "overcome the presumption that defense counsel's performance was based on sound trial strategy [and that Petitioner had] demonstrated that counsel's performance was objectively unreasonable and so prejudicial as to deprive him of a fair trial. *People v. Mitchell*, 454 Mich. 145, 162 (1997)." *(Petitioner's Appendix*

*in Support of Petition for Writ of Habeas Corpus, 3a-4a).* Therefore, the trial court granted Petitioner's motion for new trial on December 7, 2001.

---

[1]*People v. Ginther*, 390 Mich. 436; 212 N.W.2d 922 (1973)

However, on May 22, 2003, the Michigan Court of Appeals reversed the trial court's December 7, 2001 Order finding that "the trial court exceeded the scope of the Court's remand order when it granted defendant a new trial on the basis of ineffective assistance of counsel." *People v. Lemon,* 2003 WL 21210243, Mich. Ct. App. No. 232854, *2 (per curiam) (May 22, 2003). The Michigan Court of Appeals reasoned that "[a]lthough the trial court was directed to make findings of fact and a determination on the record, this Court retained jurisdiction to decide the issue whether defendant was denied the effective assistance of counsel." *Id.* Since "the [sole] purpose of the remand was to require the trial court to create an adequate record on which [the Court of Appeals] could review the issue of appeal . . . the order granting defendant a new trial was vacated." *Id.*

The Michigan Court of Appeals also made the following findings: (1) Petitioner did not meet the requisite burden of proof necessary to substantiate his ineffective assistance of counsel claim; (2) the challenged prosecutorial conduct was not improper and/or was insufficient to meet the standard for prosecutorial misconduct; (3) any alleged instructional error by Petitioner's trial counsel would not have changed, within a reasonable probability, the outcome of Petitioner's trial; and (4) any argument regarding alleged instructional errors committed by the trial court is waived as there was no objection to the instructions as given at trial

Petitioner subsequently filed an application for leave to appeal with the Michigan Supreme Court and sought review of the same previously referenced issues. The Michigan Supreme Court denied Petitioner's application, stating that: "[a]pplication for leave to appeal the May 22, 2003 judgment of the Court of Appeals is DENIED because we are not persuaded that the questions presented should be reviewed by this Court." *People v. Lemon,* 469 Mich. 969; 671 N.W.2d 880 (2003) (Table) Mich. Sup. Ct. No. 124011 (November 24, 2003). Afterwards, Petitioner filed a

Motion for Reconsideration of the November 24, 2003 Order; and the Motion was denied. *People v. Lemon,* 679 N.W.2d 62 (Table) (March 30, 2004).

On May 24, 2004, Petitioner filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. §2254, raising the same claims that were raised in the Michigan Supreme Court.

## IV.  STANDARD OF REVIEW

Under the applicable standard of review set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified at 28 U.S.C. §2254(d), a petitioner is not entitled to relief in a federal habeas corpus proceeding unless the state court's adjudication of his or her due process claim resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Under AEDPA, "clearly established federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412 (2000). A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-13.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Furthermore, a federal court may not issue a writ of habeas corpus under the "unreasonable application" clause of 28 U.S.C. §2254(d) "simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 365; *see also Prince v. Vincent,* 538 U.S. 634, 638-39 (2003). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively* unreasonable," as opposed to transforming the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was reasonable. *Williams v. Taylor,* 529 U.S. at 411.

Therefore, the threshold inquiry in this case is whether the Petitioner seeks to apply a rule(s) of law that was clearly established at the time of his conviction in the state court. *See, id.* at 412.

## V. LAW & ANALYSIS

### A. Prosecutorial Misconduct

Petitioner claims that he is entitled to habeas relief due to various instances of prosecutorial misconduct. To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). When addressing claims of prosecutorial misconduct, the Court must first determine whether the challenged statements were indeed improper. *See United States v. Francis*, 170 F.3d 546, 549 (6th Cir.1999). Upon a finding of such impropriety, the Court must then "look to see if they were flagrant and warrant reversal." *Id.* Flagrancy is determined by an examination of four factors: (1) whether the statements tended to mislead the jury or prejudice the accused; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused. *See Boyle*

*v. Million*, 201 F.3d 711, 717 (6th Cir.2000); *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial, or so gross as probably to prejudice the defendant." *Pritchett*, 117 F.3d at 964 (internal quotations omitted).

### 1. Procedural Default

Respondent asserts that Petitioner's prosecutorial misconduct claim is procedurally defaulted because of his failure to object to the challenged conduct at trial. Although the Michigan Court of Appeals acknowledged Petitioner's prosecutorial misconduct claim was not properly preserved for appeal, it nonetheless addressed each act that Petitioner asserted substantiated the alleged prosecutorial misconduct on the merits and concluded that Petitioner was not entitled to relief on his prosecutorial misconduct claims because the alleged improprieties either lacked merit or resulted in harmless error. *People v. Lemon,* 2003 WL 21210243, Mich. Ct. App. No. 232854 at *4.

The Sixth Circuit applies a multi-part analysis in order to determine whether procedural default precludes the federal courts from granting habeas relief. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). First, the court must determine (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) whether the state courts actually enforced the state procedural sanction; and (3) whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* If the answer to these questions is yes, then the court must inquire into whether the petitioner can obtain habeas relief by demonstrating under *Sykes* "that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the constitutional error." *Id.,* citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

8

In this case it is evident that the first test has been satisfied. As previously stated, the Michigan Court of Appeals acknowledged that the prosecutorial misconduct claim was not preserved for appeal.   However, the second test, that the state courts actually enforced the state procedural sanction, has not been satisfied in light of the fact that the Michigan Court of Appeals addressed each issue substantiating Petitioner's prosecutorial misconduct claim and concluded that Petitioner's position was without merit.   It is well settled that where a state appellate court has adjudicated an issue on its merits, federal courts may consider it in a petition for habeas corpus. *Manning v. Huffman,* 269 F.3d 720, 724 (6th Cir. 2001); *Meeks v. Bergen*, 749 F.2d 322, 325 (6th Cir.1984).   Therefore, the Court will address Petitioner's prosecutorial misconduct claim on the merits.

### a. Vouching for Credibility of a Witness

Petitioner alleges that the prosecutor vouched for the credibility of his witness, Amy Valentine.  Prosecutors may not make improper suggestions, insinuations, or assertions or personal knowledge, *Berger v. United States*, 295 U.S. 78, 88 (1935), and they may not interject personal beliefs into the presentation of their cases, *United States v. Young*, 470 U.S. 1, 8-9 (1985). However,

> [i]Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness' credibility thereby placing the prestige of the office of the United States Attorney behind that witness. *See, e.g., Taylor v. United States*, 985 F.2d 844, 846 (6th Cir.1993); *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir.1992). Generally, improper vouching involves either blunt comments, *see, e.g., United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir.1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid. I think he is honest."), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony, *see, e.g., [United States v.] Carroll*, 26 F.3d [1380, 1388 (6th Cir.1994) ] (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court

9

or government did not find the testimony truthful).

*United States v. Francis*, 170 F.3d 546, 550 (6th Cir.1999).

The Court finds that the Michigan Court of Appeals reasonably applied federal law as it pertains to this issue and did not make an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The prosecutor in this case did not express a personal belief in his witnesses, nor insinuate that he was privy to facts about the witnesses' credibility. To the extent that the prosecutor did imply that he had special knowledge or facts indicating Ms. Valentine's veracity, Petitioner's substantial rights were not affected and the error was harmless in light of the strength of the evidence against Petitioner. Accordingly, the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law.

### b. Civic Duty Argument

Petitioner next claims that the prosecutor made an improper civic duty argument by telling the jury that the Petitioner "should get an A plus for victim selection because the person he chose was afraid to go to the police." *(Trial Transcript, dated 12/5/00, pg. 47).* Petitioner claims that use of the words "selection" and "chose" implied to the jury that the Petitioner "had other potential victims and that the alleged crime was not an isolated incident."*(Petition for Writ of Habeas Corpus, pg. 46).* Generally, a prosecutor cannot make statements "calculated to incite the passions and prejudices of the jurors." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir.1991).

In this case, the Michigan Court of Appeals concluded that the prosecutor had not made an improper civic duty argument, stating that:

10

> The statement did not suggest that there was evidence known to the prosecutor that defendant had considered other victims.  Nor was the statement an improper civic duty argument suggesting that defendant was a danger to society.

*People v. Lemon,* 2003 WL  21210243 at *4.

 The Court agrees.  The prosecutor did not present an improper civic duty argument to the jury and, therefore, did not inject issues broader than defendant's guilt or innocence by presenting such an improper civic duty argument. Generally, prosecutors are accorded great latitude regarding their arguments and conduct. Further, prosecutors are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case. Having reviewed the record, this Court finds that the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law.   Accordingly, habeas relief is not warranted on this prosecutorial misconduct claim.

### c. Comment on the Right to Remain Silent

Petitioner also claims that the prosecutor improperly commented on his right to remain silent by stating that there was no testimony or evidence at trial which contradicted the testimony of the prosecution's witnesses. Petitioner asserts that the prosecutor improperly shifted the burden of proof onto the Petitioner by implying that if there was evidence or testimony that refuted the prosecutor's scenario of events, then the Petitioner should have stepped forward and testified about the discrepancies.

The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself." The United States Supreme Court has stated that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is

11

under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that [the defendant] stood mute or claimed his privilege in the face of accusation." *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37 (1966).   Consistent with Miranda, prosecutors may not comment on a defendant's post-arrest silence in their case in chief, on cross-examination, or in closing arguments. *Doyle v. Ohio*, 426 U.S. 610, 619-20 (1976); *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir.2002).   The Michigan Court of Appeals addressed the issue as follows:

> The prosecutor did not shift the burden of proof by arguing that there was "no evidence" to support defendant's theory that the prosecution witnesses' account was a fabrication.   The argument was a comment on the weakness of the defense theory and is akin to arguing that evidence is undisputed or uncontradicted, which is not improper."*People v. Fields,* 450 Mich. 94, 104-116; 538 N.W.2d 356 (1995).

*People v. Lemon,* 2003 WL  21210243 at *5.

The Court will review the issue to determine if the beneficiary of the error can show that the error is harmless beyond a reasonable doubt. To make this showing, there must be no reasonable possibility that the error contributed to the conviction.   Here, under these circumstances, the Court finds no possibility that any error with regard to Petitioner's right to remain silent contributed to his conviction.   Moreover, the trial court instructed the jury that "defendant is not required to prove his

innocence  to do anything" and that the jury "must not consider the fact that [defendant] did not testify."  *(Trial Transcript, dated12/7/00, pp 86-87).*

Therefore, the Court finds that the Michigan Court of Appeals' decision is consistent with United States Supreme Court precedent and constitutes a reasonable application thereof. For purposes of federal habeas review, a constitutional error that implicates trial procedures is

12

considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir.1999) (harmless error standard announced in *Brecht* applies even if a federal habeas court is the first to review for harmless error). Moreover, the prosecutor presented significant evidence of Petitioner's guilt, including the victim's testimony and eyewitness testimony. Given these circumstances, Petitioner has not shown that any error by the prosecutor had a substantial or injurious effect or influence upon the jury's verdict. Petitioner is thus not entitled to relief on this prosecutorial misconduct claim.

### d. The Juror's Identification with the Victim

Petitioner contends that the prosecutor improperly asked the jurors to place themselves in the position of Amy Valentine by asking them to recall when they were sixteen years old. The Michigan Court of Appeals stated:

> In this case, the crux of the prosecutor's argument was to explain that the complainant's delay in reporting the charged incident and her conduct in admittedly lying to the police about her address was understandable in light of her youth. Because the crux of the prosecutor's argument was not improper, and any perceived prejudice could have been cured by a cautionary instruction, defendant is not entitled to reversal on this basis.

*People v. Lemon,* 2003 WL 21210243 at *5.

It is not improper to ask the jury to put itself in the place of a victim of a crime as a means of asking the jury to understand why the Complainant in this case responded in such an unusual manner to the alleged sexual assault in the manner in which she did. *See United States v. Kirvan*, 997 F.2d 963, 964 (1st Cir.1993). Moreover, even if the prosecutor's appeals to the jury's emotions or sympathies was improper, this would be insufficient to render the trial fundamentally unfair,

13

since it was likely that the nature of the crime itself and the known age of the Complainant would have produced juror sympathy and understanding before the prosecutor made any of these comments. *Walker v. Gibson*, 228 F.3d 1217, 1243 (10th Cir.2000). Finally, Petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to use bias or prejudice to influence their decision and that their decision should only be based on evidence admitted at trial. *(Trial Transcript, dated 12/7/00, pp. 88-89); See Welch v. Burke*, 49 F.Supp.2d 992, 1006 (E.D.Mich.1999).

Therefore, the Court finds that the Michigan Court of Appeals' decision relative to this issue of prosecutorial misconduct is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law. Accordingly, habeas relief is not warranted on Petitioner's claims of prosecutorial misconduct.

**B.  Instructional Error**

Petitioner asserts that the trial court erred by failing to give the jury instruction regarding impeachment by prior convictions. Petitioner also claims that the trial court erred by failing to give the jury an instruction on prior inconsistent statements. As to the first alleged error, Petitioner maintains that since George Kitchen admitted to a prior conviction for theft that the trial court should have provided the CJI2d 5.1 instruction which discusses impeachment by prior conviction. Relative to Petitioner's second instructional error, he contends that since Amy Valentine was impeached by her preliminary examination testimony and George Kitchen was impeached by his examination testimony the credibility of these witnesses became an important issue. Petitioner states that:

[I]in view of the fact that the defense theory was that the allegation was a complete

14

fabrication the failure to properly instruct on the use of prior convictions and prior consistent statements in assessing credibility meant that the instruction was unfair. The other instructions given by the court did not adequately appr[]ise the jury on this controlling issue of the case.

*(Petition for Writ of Habeas Corpus, pg. 37).*

The Michigan Court of Appeals stated that these instructional issues had been waived since Petitioner did not object to the jury charge at trial. When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-751 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

In this case, the Michigan Court of Appeals clearly indicated that by failing to request these jury instructions at trial, Petitioner had not preserved this issue. The Michigan Court of Appeals' limited review of the unobjected to error for manifest injustice does not constitute a waiver of the procedural default by the State of Michigan. *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir.1989).

To establish cause to excuse a procedural default, a petitioner must present a substantial reason to excuse his procedural default. This generally requires the petitioner to "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel is cause for a procedural default. *Id.* However, attorney error that falls short of constitutional ineffective assistance of counsel does not constitute "cause" for a procedural default. *Rust v. Zent*, 17 F.3d 155,

15

161 (6th Cir.1994).  Petitioner's asserts an ineffective assistance of counsel claim which includes various allegations of errors and failures committed by trial counsel.  Failing to request the above stated jury instructions is one of the bases for Petitioner's ineffective of assistance of counsel claim. The issue will be addressed below in the ineffective assistance of counsel discussion.

Relative to the instructional error issue itself, the Supreme Court has stated that "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction, when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154  (1977). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Id.* at 154-155, 97 S.Ct. 1730. The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391 (1999); *Cupp v. Naughten*, 414 U.S. 141 (1973). To warrant habeas relief, the jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Scott v. Mitchell*, 209 F.3d 854, 882 (6th  Cir.2000). A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *Fama v. Commissioner of Correctional Services*, 69 F.Supp.2d 388, 397 (E.D.N.Y.1999).

In the present case Petitioner asserts that the instructions given did not adequately guide the jury in its consideration of George Kitchen's admission regarding his previous conviction, nor its consideration of prior inconsistent statements made by Amy Valentine and George Kitchen during their preliminary examination testimony.   This is not a case were a challenged instruction added an additional element to the defendant's burden of establishing his defense as in *Barker v. Yukins*, 199 F.3d 867, 875-76 (6th Cir.1999)(failure to give required instruction that use of lethal force to resist an imminent rape would be lawful self-defense). Nor is this a case where the challenged instructions could be reasonably construed as impermissibly shifting the burden of proof of an element of the crime to the defendant, *Sandstrom v. Montana*, 442 U.S. 510 (1979), or could reasonably have resulted in requiring establishment of a higher degree of doubt than a reasonable doubt for acquittal. *See Cage v. Louisiana*, 498 U.S. 39, 41 (1990).

In the present case, the jury instructions as given instructed the jury relative to the assessment of a witnesses' credibility.  Moreover, Petitioner's trial counsel made an argument before the jury regarding George Kitchen's conviction and how that reflects upon his credibility. *(Trial Transcript, dated 12/7/00).*  Therefore, the jury was instructed about prior convictions having an effect upon a witnesses' credibility.  As for the issue of impeachment by using prior inconsistent statements, Petitioner has not shown that this  instruction by itself violated due process of law. Accordingly, this Court concludes that Petitioner's claim that the trial court should have sua sponte given the above referenced jury instructions is without merit and that the jury instructions as given did not deprive him of a fair trial and does not entitle him to habeas relief. Consequently, this claim is denied as an independent basis for habeas relief.

## C.  Ineffective Assistance of Counsel

17

Petitioner claims that his trial counsel was ineffective in several respects.  He alleges that his attorney: (1) failed to show that the charges were brought against him in retaliation for complaints made against George Kitchen; (2) failed to investigate the prosecution's witnesses; (3) failed to request proper jury instructions which supported the defense theory; and (4) failed to object to prosecutorial misconduct.

To establish that his counsel was ineffective, Petitioner must prove that (1) "counsel's performance was deficient" and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A strong presumption exists that counsel afforded the defendant reasonable professional assistance. *Id.* at 689.  To satisfy the second prong of the *Strickland* test, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Therefore, "an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken." *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir.2002). The Court will address each of Petitioner's four ineffective assistance claims seriatim.

**1. Failure to Establish a Retaliation Motive Initiated by George Kitchen and Against the Petitioner & Failure to Investigate the Prosecution's Witnesses**

Petitioner first alleges that counsel was ineffective for failing to show that he was falsely accused of sexually assaulting Amy Valentine in retaliation for complaints made against George Kitchen by Kathryn Lindley.   In this case, the trial court agreed that it was not an objectively reasonable strategy to exclude the evidence and testimony regarding the relationship and

18

documented incidents involving Ms. Lindley, Mr. Kitchen and the Valentine twins." *(Petitioner's Appendix in Support of Petition for Writ of Habeas Corpus, 3a-4a)*.    The Michigan Court of Appeals was persuaded by trial counsel's testimony at the *Ginther* hearing regarding his three-fold reasoning for not presenting Petitioner's proposed theory to the jury (i.e., (1) Mr. Kitchen and the Valentine twins' testimony against the Petitioner was an act of retaliation; and (2) the basis upon which their animosity against the Petitioner originated with Ms. Lindley).

First, defense counsel stated at the *Ginther* hearing that since Ms. Lindley was approximately sixteen years of age at the time of trial and Petitioner was approximately twenty-three years old, he did not want to bring to the jury's attention the age difference, nor did he want the jury to think that if Petitioner has a sixteen year old girl friend, he may have been capable of raping the sixteen-year old Complainant. *(Evidentiary Hearing Transcript, 11/27/01, pp. 14-15, 27)*.  Second, trial counsel argued that the relationship between Ms. Lindley, Mr. Kitchen and the Valentine twins had nothing to do with the Petitioner, thereby making any evidence or testimony relative to these individuals peripheral, irrelevant and inadmissible.  *Id.* at 27, 33, 41.  Finally, if Ms. Lindley testified, defense counsel believed that he would risk Petitioner being convicted of the misdemeanor charge of

furnishing alcohol to a minor. *(Petitioner's Appendix in Support of Petition for Writ of Habeas Corpus, 4a)*.

For purposes of determining whether the Petitioner in this case has established an ineffective of assistance counsel claim relative to trial counsel's failure to develop the proposed defense theory, the Court acknowledges several points.  First, trial counsel stated that he did not develop the proposed defense theory because he did not want the jury to become aware of or to focus upon the

19

fact that Petitioner's girlfriend, Ms. Lindley, was a high school teenager and approximately seven years Petitioner's junior. However, the jury was made aware of this fact on more than one occasion during trial without Ms. Lindley being produced as a witness. Mr. Kitchen testified that Petitioner was involved with Ms. Lindley and that she had not yet reached the age of sixteen. *(Trial Transcript, dated 12/7/00, pp. 23-24).* The Complainant testified that she knew Ms. Lindley and alluded to the fact that Ms. Lindley was a student at her (Complainant's) high school. *(Trial Transcript, dated 12/5/00, pg. 80).* Alicia Valentine, stated through her testimony that Ms. Lindley was a student at her high school and that she was harassed by Ms. Lindley and the Petitioner, who was at her high school frequently. *(Trial Transcript, dated 12/7/00, pp. 48-49).*

Moreover, the *Ginther* hearing testimony bears out that although trial counsel was certainly made aware of the facts in support of Petitioner's proposed theory, defense counsel admitted that he was not aware of all of the confrontational situations, the parties involved, the details surrounding the alleged harassment of Ms. Lindley, and the involvement of Mr. Kitchen and the Valentine twins,

in part because he admittedly did not investigate the matter thoroughly (i.e., failed to access court files)[2]. *(Evidentiary Hearing Transcript, 11/27/01, pp. 17-18).*

Second, trial counsel argued that the Lindley, Kitchen, and Valentine saga had nothing to

---

[2]

Petitioner also asserts that trial counsel's failure to access court files and police reports regarding Mr. Kitchen and the Valentine sisters' criminal history precluded him from using relevant and admissible impeachment evidence and prior inconsistent testimony against these individuals in a further effort to challenge their credibility and emphasize their bias and motive to incriminate the Petitioner in this criminal sexual conduct offense.

20

do with the Petitioner, and was therefore irrelevant, collateral and inadmissible in Petitioner's case[3].

However, the record shows that an addendum to Ms. Lindley's petition for a personal protection

stalking order against Mr. Kitchen states that he threatened Ms. Lindley by telling her she had to

say on tape that she slept with the Petitioner; and if she did not, he would not leave her alone.

*(Petitioner's Appendix in Support of Petition for Writ of Habeas Corpus, 17a).* It could be argued

that Mr. Kitchen's zeal to obtain such a recording was an attempt on his part to possess statutory

rape evidence against the Petitioner. That evidence could have been used to get the Petitioner

arrested and imprisoned, which was ultimately achieved with Mr. Kitchen's testimony in this case.

Also, as previously stated, Alicia Valentine testified that the Petitioner harassed her at

school. *(Trial Transcript, dated 12/7/00, pp. 48-49).* It could have been argued that this testimony

showed that there was another motive to retaliate against the Petitioner. Finally, Mr. Kitchen

accompanied the Complainant to the police station to file the rape complaint against the Petitioner

approximately one year after the incident (11/5/99) and nine days after Mr. Kitchen learned that Ms.

Lindley filed a police report against him for harassment (10/27/99). *(Petitioner's Appendix in*

*Support of Petition for Writ of Habeas Corpus, 20a, 22a).* In any case, the record indicates that

there is a connection between Mr. Kitchen, Ms. Lindley, the Valentine twins and the Petitioner.

The Court finds that in light of: (1) the trial court's order granting a new trial; (2) the jury's

knowledge about Ms. Lindley's age; and (3) the connection between Mr. Kitchen, Ms. Lindley, the

Valentine twins and the Petitioner, as borne out in the record, that there is sufficient evidence to

---

[3]This includes Petitioner's assertion that defense counsel should have investigated and presented evidence concerning the abovementioned connection between Petitioner and George Kitchen, Amy Valentine, and Alicia Valentine and an incident where Mr. Kitchen and the Valentine twins were arrested at a concert.

argue that defense counsel could have made a mistake in his assessment of the evidence and the execution of his trial strategy. This Court's responsibility, however, is not to second guess the trial strategy of the attorney, but to determine whether the Michigan Court of Appeals' decision was consistent with the *Strickland* standard of review and whether the state appellate court reasonably applied the federal law as it relates to ineffective assistance of counsel claim in this case. A defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant. *Marra v. Larkins*, 111 F.Supp.2d 575, 585, fn. 13 (E.D.Pa.2000).

The fact that trial counsel chose to draw the jury's attention away from the fact that Petitioner involved himself with underage girls by not calling his current underage girlfriend to the witness stand is a strategy that he chose to implement in order to present his client to the jury in the best light. Moreover, the evidence regarding incidents involving Mr. Kitchen and the Valentine sisters, unrelated to the sexual assault, would arguably be deemed inadmissible hearsay information, as indicated by the state appellate court in this matter. *People v. Lemon,* 2003 WL 21210243 at *3. Finally, although another basis for trial counsel's decision to keep Ms. Lindley off of the witness stand was to lessen Petitioner's chances of being convicted of a misdemeanor charge of furnishing alcohol to a minor, the fact that Petitioner was ultimately convicted of the crime notwithstanding is not a basis for finding ineffective assistance of counsel. An unfavorable result does not equate with ineffective assistance of counsel. *People v. Kevorkian,* 248 Mich. App. 373, 414; 639 N.W.2d 291 (2001). Accordingly, Petitioner has not shown that defense counsel was deficient under the *Strickland* standard of review or that the chosen trial strategy was unreasonable given the facts of the case.

For the above stated reasons, this Court is not persuaded that trial counsel's decision not to

22

call Kathryn Lindley for the purpose of establishing George Kitchen's alleged motive was unreasonable since there has been no allegation that Ms.Lindley would have exculpated Petitioner of the crimes with which he was charged. *Millender v. Adams,* 187 F.Supp.2d 852, 877 (E.D.Mich.,2002). Having considered the matter, this Court concludes that the Michigan Court of Appeals' decision is consistent with United States Supreme Court precedent and constitutes a reasonable application of federal law.   Thus, Petitioner is not entitled to relief on his ineffective assistance of counsel claim.

### 2. Failure to Request Proper Jury Instructions & Failure to Object to Prosecutorial Misconduct

Since the Court has already ruled that there was no instructional error or prosecutorial misconduct, it accordingly finds that there was no ineffective assistance of counsel when Petitioner's trial attorney did not object to and/or request certain jury instructions. The Court likewise finds no ineffective assistance of counsel as a result of Petitioner's trial attorney's decision not to object to certain prosecutorial conduct.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that Petitioner's claim for habeas relief filed pursuant to 28 U.S.C. §2254 is without merit.

IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus Under 28 U.S.C. §2254 **[Doc. #1-1, filed May 24, 2004]** is **DENIED** and this matter is **DISMISSED WITH PREJUDICE.**

23

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  February 8, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on February 8, 2006, by electronic and/or ordinary mail.

S/Josephine Chaffee
Secretary/Deputy Clerk

24